UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,            CRIMINAL NO. 18-CR-20653

v.

                                      HON. STEPHEN J. MURPHY, III

JUAN ANTONIO GARCIA-JIMENEZ,

               Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

      The United States of America, by its attorneys, Matthew Schneider, United States Attorney for the Eastern District of Michigan, and Susan E. Fairchild, Assistant United States Attorney, respectfully submits this Sentencing Memorandum regarding Defendant Juan Antonio Garcia-Jimenez, who is scheduled to be sentenced on March 7, 2019. The government recommends a sentence of confinement of 21 months, the mid-point of the applicable guideline range of 18 - 24 months, as indicated in the Rule 11 and the Pre-Sentence Report (PSR, ¶ 3A). The Rule 11 provides that the government will not seek a sentence greater than the mid-point of the applicable sentencing guideline range.

1

## I.   PROCEDURAL BACKGROUND

Defendant is charged in a six-count Indictment with Encouraging and Inducing Illegal Entry into the United States, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv). On November 21, 2018, Defendant entered a guilty plea to all the charges in the indictment pursuant to a Rule 11 Plea Agreement. Defendant has been in the custody of the U.S. Marshal Service since August 29, 2018, just over 6 months.

## II.   FACTUAL BACKGROUND

Defendant Juan Antonio Garcia-Jimenez, (a/k/a "Antonio") is a naturalized Canadian citizen, originally from Guatemala. He resides in Windsor, Ontario.   In March 2018, the United States Border Patrol and the Royal Canadian Mounted Police (RCMP) began an investigation of Defendant, suspected to be involved in alien smuggling from Canada to the United States.   Defendant was using the Michigan Central Railway Tunnel between Canada and the United States to smuggle illegal aliens across the border.

The Michigan Central Railway Tunnel, hereinafter referred to as "tunnel," is a railroad tunnel located under the Detroit River that connects Detroit, Michigan in the United States with Windsor, Ontario, Canada.   The tunnel is 1.6 miles in length and is used solely for train cargo travel. The walkway on either side of the tracks is

2

narrow and in poor condition. When a train passes through a tunnel, air is displaced creating a phenomenon called the "piston effect."   In essence, as the train pushes air out of the tunnel, suction pulls air into the tunnel on the opposite end.[1]   Due to the sloping nature of this tunnel (under the Detroit River), the high velocity travel of the trains and, as depicted below, the tunnel's compact nature, the presence of pedestrians on narrow walkways inside the tunnel is extremely dangerous.



Michigan Central Railway Tunnel, Detroit, MI. entrance,
https://www.youtube.com/watch?v=MTVWC9vCiBY

---

[1] See https://ipfs.io/ipfs/QmXoypizjW3WknFiJnKLwHCnL72vedxjQkDDP1mXWo6uco/wiki/Piston_effect.html

3





Incident #1

On March 19, 2018, Detroit Station Border Patrol Agents apprehended

Juan Pablo Ramirez-Torres as he attempted to enter the United States

unlawfully by walking through the tunnel from Canada. Ramirez is a citizen and national of Mexico and had been lawfully living and working in Canada. Several months prior to his arrest, Ramirez began to speak with people in Canada about the possibility of crossing into the United States illegally. Ramirez spoke with a man named "Antonio" whom he met at a restaurant in the Leamington, Ontario area. "Antonio" said he could help Ramirez get into the United States.

On March 18, 2018 at approximately 11:30 P.M., "Antonio" picked Ramirez up at his apartment in Kingsville, Ontario. "Antonio" drove Ramirez to a location near the tunnel in Windsor, Ontario. "Antonio" showed Ramirez the location where he needed to enter the tunnel and instructed him to enter the tunnel after the train from Canada to the United States had passed. "Antonio" told Ramirez that he needed to wait for the train so the cameras would not notice him and the sensors would not activate. "Antonio" told Ramirez that once in Detroit a man named Jose Rodriguez would pick him up. Ramirez paid money to "Antonio" to help him enter the United States. On March 19, 2018, Ramirez entered the tunnel and attempted to enter the United States. Immediately upon exiting the tunnel, Border Patrol Agents apprehended Ramirez.

5

Incident #2

On July 14, 2018, at approximately 2:00 A.M., U.S. Border Patrol Agents apprehended two subjects exiting the train tunnel.   The subjects, later identified as Obseli Fidencio Maldonado-Gomez and Cesar Florentin Lopez-Hernandez, told agents they were coming from Canada and were going to the Greyhound bus station in Detroit, Michigan, with a final destination of North Carolina.   Both subjects told agents they were able to legally work and reside in Canada.   Both subjects stated that they met a taxi driver outside of a market in Leamington, Ontario. The subjects referred to the taxi driver as "Peter." "Peter" offered to smuggle both subjects into the United States via the tunnel for $1,500 U.S.D. each.   Both subjects stated that they paid $1,500 to "Peter" to be smuggled into the United States. On the evening of July 13, 2018, "Peter" arrived at approximately 11:00 P.M. to take both subjects to the Windsor, Ontario area.   At approximately 1:30 A.M., both subjects were instructed by "Peter" to wait for the next train entering the United States from Canada.   "Peter" told both subjects that they had to wait for the train so they did not set off the sensors or cameras.   As the train arrived, the subjects were instructed by "Peter" to enter the tunnel behind the train and walk along the narrow walkway to the United States.   One of the subjects had a poorly drawn

6

map of the tunnel entrance and a list of street names near the Greyhound bus station in Detroit, MI. During follow up interviews, both subjects were shown a photo of Defendant, Juan Antonio Garcia-Jimenez.   Both subjects identified Defendant as the taxi driver who brought them to the tunnel and instructed them how to illegally enter the United States.

Incident #3

On July 30, 2018 at approximately 4:00 A.M., U.S. Border Patrol Agents apprehended two subjects exiting the tunnel.  Both subjects, later identified as Brayan Corado-Recinos and Ipolito Carpio-Recinos, stated that they entered the United States through the tunnel and were traveling to an unknown hotel in southwest Detroit to await pickup from a family member.

Corado-Recinos claimed that he contacted the smuggler via text message and then later by "What's App." He learned that the smuggler's name was "Antonio." His first contact with "Antonio" was on July 18, 2018.  After several conversations with "Antonio", arrangements were made for Corado-Recinos to be smuggled into the United States through the tunnel for $1,500 U.S.D. After telling his co-worker Carpio-Recinos of his intent to enter the United States, Carpio-Recinos also wanted to be smuggled into the United States. On July 29, 2018, both subjects were picked up by "Antonio" near

farms in Leamington, Ontario and driven to Windsor, Ontario.   Upon arriving in Windsor, "Antonio" took them to the Caesars Casino in Windsor to exchange their Canadian currency for United States dollars. "Antonio" entered the casino with them to assist them with translation. The exchange was corroborated with video footage from the casino.





The footage shows GARCIA-JIMENEZ leading Corado-Recinos and Carpio-Recinos through the casino to the cash exchange desk. After they exchanged their currency, they left the casino with "Antonio" and proceeded to the railroad tunnel entrance in Windsor, Ontario. They waited with "Antonio" in his vehicle for approximately three hours, near the entrance to the train tunnel, waiting for a train to enter the United States. At approximately 3:30 a.m., "Antonio" stated that the train was probably not going to come and he told them to begin their walk through the tunnel. They entered the tunnel and exited the United States side at approximately 4:00 a.m. Both subjects were apprehended by United States Border Patrol agents upon exiting the tunnel. Both subjects paid "Antonio" $1,500 U.S.D. or the Canadian equivalent. During post-arrest interviews, both subjects identified Defendant as the smuggler who brought them to the tunnel and arranged for

their entry into the United States. The photo below from security cameras shows the men entering the railroad tunnel in Windsor, crossing into the United States.



Incident #4

Sometime prior to August 25, 2018, Maria de las Angeles Tellez-Orgaz, Maura Tellez-Orgaz, Dafne Michel Lopez-Tellez and Anderson Arreola-Tellez, who are citizens and nationals of Mexico, contacted Defendant. They contacted Defendant to see if he would help them illegally enter the United States.   They had traveled to Canada from Mexico and wanted to go to the United States for better employment opportunities. Defendant agreed to help them enter the United States by traveling through

10

the underground railroad tunnel located between Windsor, Ontario and Detroit, Michigan.   Defendant charged them $1500 each for his assistance and advice in traveling through the tunnel. Because they could not raise all the money needed, only $5680 U.S.D. was paid to Defendant. Upon entry into the United States on or about August 25, 2018, they were apprehended by Border Patrol Agents and taken into custody. The photos below show the aliens entering into the tunnel from Windsor and exiting the tunnel into the United States. The photos are from surveillance cameras placed at the tunnel entry points.







Each of the aliens identified Defendant, "Antonio" as the smuggler. Photos taken by one of the aliens showed Defendant in the car with the aliens as he drove them to the train tunnel. In addition, text messages were produced which discussed how the smuggling was to occur and payment by the aliens.

Defendant was arrested on August 29, 2018, when he traveled into the United States with his wife and daughter. He has been in the custody of the U.S. Marshals since his arrest.

III.   <u>SENTENCING CALCULATION</u>

Both parties have calculated the guideline range as 18-24 months imprisonment in the Rule 11, and the Probation Department agrees (PSR, ¶ 48).

IV.   <u>GOVERNMENT'S RECOMMENDATION</u>

As set forth in the PSR, based upon Defendant's criminal history and the underlying criminal conduct, Defendant falls within the sentencing guideline range of   18 - 24 months.   The government respectfully recommends that the Court impose a sentence of confinement of 21 months, to be followed by a 3 year period of non-reporting supervised release. Defendant will be deported back to Canada following service of any term of imprisonment imposed by this court. A custodial

sentence of 21 months would recognize the seriousness of Defendant's offense conduct and would serve as a deterrent to future criminal activity.

V.     ANALYSIS OF 18 U.S.C. §3553(A) FACTORS

A sentence of 21 months, within the guideline range calculated by the U.S. Probation Dept., appropriately takes into account the factors identified in 18 U.S.C. §3553(a), and, in view of the totality of the circumstances and facts of Defendant's case, is reasonable.

Nature and Circumstances of the Offense/History and Characteristics of Defendant

The criminal charges involve Defendant smuggling aliens into the United States. Defendant did so for personal profit and economical gain.  Defendant's actions put the lives of the aliens at great risk.  Not only was the tunnel in poor condition for pedestrian travel, but it was very dark and the risk of trains traveling through the tunnel at a high rate of speed, during the pedestrian travel, was high. An encounter with the train while in the dark train tunnel would be fatal for the travelers.

Defendant is 53 years old. He is a naturalized Canadian citizen, originally from Guatemala.  As a non-native of Canada himself, he was aware of the desperation of the aliens wanting to come to the United States for better employment

14

and living conditions. He prayed on the aliens' vulnerabilities and charged them a substantial price for his advice and counsel on how to illegally enter the United States. Due to the clandestine nature of this criminal activity, there is no way to be certain how many times he has smuggled aliens into the United States in the past. Countless aliens could have illegally entered the United States with his assistance.

> Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law and to Provide Just Punishment for the Offense and the Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

In encouraging the illegal aliens to travel through the tunnel late at night, Defendant placed the lives of the aliens in jeopardy, because cargo trains traveling between the United States and Canada at high rates of speed, currently use the tunnel. In addition to subjecting the aliens to danger, through his actions he displayed a great disregard for the immigration laws of the United States, the laws which serve to protect our borders and national security.  Without a significant sanction being imposed upon him, Defendant is likely to engage in future similar acts. Based upon the incidents described above, it is apparent that smuggling illegal aliens into the United States became a profitable way for Defendant to supplement his income as a taxi driver in Canada.

Because this Court is obligated to impose a sentence necessary to reflect the

15

seriousness of the offense, promote respect for the law and to provide just punishment for the offense, as well as a sentence to afford adequate deterrence to criminal conduct, a sentence of confinement of 21 months is warranted.

<u>The Need for the Sentence Imposed to Protect the Public from Further Crimes of Defendant</u>

Persons who need to be protected from further crimes of the Defendant are the aliens who fall victim to Defendant's scheme of smuggling them into the United States at great risk. Security regulations and standards exist requiring aliens to be presented to immigration officials at border crossings before gaining entry into the United States for the security of U.S. citizens. By smuggling aliens into the country, Defendant bypassed those regulations.

<u>The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct</u>

A sentence of 21 months, within the calculated range of 18-24 months is appropriate to avoid unwarranted sentence disparities with defendants who have similar criminal records and who engage in similar type criminal activity.

## VI.   <u>CONCLUSION</u>

The Probation Officer has not identified any factors to warrant a departure from the applicable sentencing guideline range (PSR, ¶ 62). Likewise, the

16

government has not identified any reason to depart. A sentence of 21 months' imprisonment, to be followed by a period of non-reporting supervised release, should be imposed.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

s/Susan E. Fairchild (P41908)
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226
(313) 226-9577
E-mail: susan.fairchild@usdoj.gov

Dated: February 27, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

Rhonda Brazile, Attorney for Defendant

s/Susan E. Fairchild P41908
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Phone: (313) 226-9577
E-mail: susan.fairchild@usdoj.gov

17