UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

            HONORABLE STEPHEN J. MURPHY III
v.            Criminal No. 18-20653

JUAN ANTONIO GARCIA-JIMENEZ,

   Defendant.
_____/

**DEFEENDANTS' SENTENCING MEMORANDUM AND REQUEST FOR SENTENCING VARIANCE**

Defendant JUAN ANTONIO GARCIA-JIMENEZ is charged in a six count Information with Encouraging and Inducing Illegal Entry in violation of 8 U.S.C.§§1324(a)(1)(A)(iv) and (a)(B)(1).

He pleaded guilty pursuant to a negotiated written Rule 11 Plea agreement, that anticipated an advisory guideline range of 18 to 24 months, the Government making a non-binding recommendation for a sentence of imprisonment that does not exceed the mid-point of the advisory guideline range, and the parties agreement to the imposition of a fine in the amount of $8680.00.

After his plea, he participated in a presentence investigation interview, and a presentence report (PSR) was prepared and submitted to the defendant. There were no objections or corrections to the report.

While Mr. Garcia-Jimenez is subject to a statutory maximum of 10 years imprisonment, the probation department confirmed that Mr.Garcia-Jimenez faces an advisory guideline range of 18 - 24 months imprisonment.

Mr. Garcia-Jimenez believes that a sentence below the determined advisory range is appropriate in this case. He files this memorandum in support of his request and to provide the Court additional information he hopes will assist the Court in determining the most appropriate sentencing outcome.

## 18 U.S.C. § 3553(a)(1): The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Juan Garcia-Jimenez is a 53 year old Canadian citizen who migrated to Canada from Guatemala, with his former wife and children. After his divorce from his first wife, Juan married Fabiola Najera-Narvaez and had another child, his youngest daughter Estela who is currently 15 years old. Juan and Fabiola remain married and support their youngest daughter who resides with them.

Juan helped his current wife migrate to Canada to start their new life together promising the Canadian Immigration Authorities that he would care for Fabiola without any government assistance. As such, Juan is the sole breadwinner in his family.

He worked steadily providing for his family as a taxi driver. He used his own vehicles and contracted to provide taxi services in the Windsor and surrounding areas. He made a good wage as a taxi driver but as sole provider for his family, he was concerned that he could not provide for all his family's needs.

Juan is a devoutly religious man, being a member of the Jehovah's Witnesses for over 30 years. As a witness, he devoted his life to evangelical missions and in service of the community.

His hard work and ministry allowed his wife Fabiola to be home with their daughter, Estella, who suffers from clinical depression. Estella was diagnosed with depression about two years ago, but recently her condition worsened.

In August 2018, Juan, Fabiola and Estella were on their way to dinner in Southwest Detroit to celebrate their anniversary. However, once he lawfully crossed the border he was arrested. Unbeknownst to him and his family, Juan had been the subject of on-going investigation for assisting others in their illegal entry into the United States.

3

Juan had not been seen transporting individuals into the United States, but instead was suspected of facilitating the illegal entry of multiple aliens by transporting them to the mouth of a U.S./Canadian train tunnel. The aliens were spotted entering on the Canadian side and exiting the tunnel on the U.S. side. When apprehended they described Juan as their contact to get across the border. Thereafter investigation by Canadian authorities, in conjunction with U.S. border patrol agents, led to Juan.

When he and his family came across the border for dinner, expecting to have a nice family dinner together….instead Fabiola and Estella had to return to Canada without him. Juan relates that Fabiola and Estella were shaken by his arrest. Fabiola relates that she is confused and saddened by these events and the accusations of criminal conduct that took her entirely by surprise.  Juan has never been in trouble before.

Estella has taken it particularly hard.

Fabiola relates that after Juan's arrest, Estella would not speak for a week. She retreated to her room where she stayed. And continuously cried. She would not eat. She would not speak for a week.

Fabiola did not work before Juan's arrest being caretaker to Estella who needed her attention and support. Since Juan's arrest, Estella has been spiraling. Fabiola relates that Estella experiences 'panic attacks' one of which recently caused her to flee the home. She fainted outside a block from their house.

Doctors warned that Estella may need to be hospitalized, but for now they are monitoring her on new medications.

Fabiola has a medical condition as well, diverticulitis and diabetes that prevents her from working outside the home.   Juan was the sole provider for their financial needs.

4

His absence has put the family in emotional and financial distress. Fabiola is currently relying on savings which are quickly being depleted. Estella suffers in her dad's absence.

Mr. Garcia has admitted to his conduct and knows he must answer for his actions.

However, he is very worried about the future of his family. Mr. Garcia deeply regrets his involvement in this offense. He has put his family in a dire situation and desperately hopes the Court will allow him the opportunity to return to his family in the very near future.

**18 U.S.C. §3553(a)(2)(A) and (a)(2)(B): to reflect the seriousness of the offense, promote respect fo rthe law, provide just punishment for the offense, and afford adequate deterrrence to criminal conduct**

Mr. Garcia-Jimenez has been in custody since his arrest in late August 2018, or 7 months. While he faces an advisory guideline range of 18-24 months, the length of imprisonment he has served since his arrest is sufficient but not greater than necessary to provide just punishment in this case.

The Court can fashion a sentence here that punishes Mr. Garcia's admitted conduct, ensures deterrence and promotes respect for the law, while allowing Mr. Garcia to the chance to return as his family's sole source of support.

The fact that Mr. Garcia has no previous incarceration experience allows the effect of this continued prosecution to have greater deterrent impact. Clinical studies have determined that for defendant's with such backgrounds as Mr. Garcia' (no prior incarceration experience), the deterrent effect of the certainty of punishment has a far greater impact than that of a lengthy prison sentence. See Deterrence in Criminal Justice, by Dr. Valerie Wright Ph.D, published November 2010, by the Sentencing Project, Washington D.C.

Dr. Wright explains that researchers find an increased likelihood that lower-risk offenders will be more negatively affected by incarceration. Among low-risk offenders, those who spent less time in prison were 4% less likely to recidivate than low-risk offenders who served longer sentences. Thus, when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism.[4] In this case, the prospect of the effect the incarceration he has already experienced has certainly impressed upon Mr. Garcia the importance of living a law abiding life.

## 18 U.S.C. §3553(a)(3): The kinds of sentences available

The advisory sentencing range of 18 - 24 months, the defendant having already served 7 months incarceration, is greater than necessary to accomplish the goals of sentencing in this case. The defendant's time in custody thus far is sufficient to impress upon him the serious nature of his offense. He has remained in custody while receiving word of his family's circumstances and desperately wants to return to assist them. A sentence need only be sufficient but not greater than necessary to achieve the sentencing goals listed herein and the time he has spent in custody awaiting the disposition of his case appears to satisfy this goal of sentencing.

In the case, *Gall v. United States, 128 S. Ct. 586 (2007)*, the Supreme Court affirmed the sentencing court's variance from a 30 - 37 month guideline range to a sentence of 36 months probation. In that case, the sentencing court carefully considered the defendant's

---

[4] Thomas Orsagh and Jong-Rong Chen, "The Effect of Time Served on Recidivism: An Interdisciplinary Theory," *Journal of Quantitative Criminology,* 4(2):155-171, 1988.

history and characteristics, his rehabilitative efforts after commission of the offense, and other sentencing factors. The sentencing judge gave Defendant Gall 36 months probation stating that upon consideration of these factors a probationary sentence was sufficient but not greater than necessary to accomplish the goals of sentencing. While the Court of Appeals found the sentencing court's ruling unreasonable, the Supreme Court upheld the variance to probation. In it decision, the Supreme Court noted that s The law must "tak[e] into account the real conduct and circumstances involved in sentencing," Gall v. United States, 128 S. Ct. 586, 599 (2007), as well as the defendant's personal history and characteristics, 18 U.S.C. § 3553(a)(1). The guidelines cannot accomplish this because they cannot convert Mr. Garcia's life into a table entry. Therefore, the Court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id. at 598 (internal citation omitted).

Certainly this case presents those factors for consideration of a departure or variance for Family Ties and Responsibilities under §5H1.6 of the guidelines. Application Note 1 provides that the Court should look to the seriousness of the offense, involvement in the offense of member of the defendant's family, and the danger to members of the defendant's family as a result of the offense

As described above, the significantly dire consequences of a custodial sentence imposed upon this Defendant involve the well - being of his wife and daughter.

§5H1.6, Application Note 1 states that the Court is required to consider whether, absent the requested departure, the defendant's service of a guideline sentence will cause substantial, direct and specific loss of essential caretaking or essential financial support to the defendant's family; whether the loss of caretaking

and support substantially exceeds the harm ordinarily incident to incarceration for similarly situated defendants; and whether there exists any effective remedial or ameliorative programs available, making the loss of the defendant's financial support irreplaceable to the defendant's family.

In *United States v. Husein*, 478 F. 3d 318 (6th Cir. 2007), the Court of Appeals upheld this Court's sentence of 1 day imprisonment, followed by a 3 year term of supervised release with conditions, where the district judge determined that the defendant's family circumstances were in fact extraordinary enough to warrant an additional downward departure under §5HI.6. In that case, the defendant was convicted a transporting ecstacy and faced a guideline sentence of 37 - 46 months. Noting that the district court after *Booker* must consider 'any pertinent policy statement' and finding §5H1.6 to be such a statement, the Sixth Circuit held that family circumstances which was once discouraged under the mandatory guideline regime, is now a permissible factor for consideration when weighing statutory factors apart from the guidelines. *Id* at 326. Noting that the commentary recently added to §5H1.6 gives the sentencing courts necessary guidance about when such a departure is appropriate, the Court of Appeals found that the district judge did not abuse her discretion in sentencing the defendant so that the defendant could remain a vital supporting force in her family.

The sentencing outcome suggested herein appears comparable to those similarly situated defendants previously sentenced in this District.

**18 U.S.C. §3553(a)(6): The need to avoid unwarranted sentence disparities amongst similarly situated defendants with similar records**

Defendants prosecuted for illegal entry or re-entry have usually been immediately deported. Others who have been prosecuted usually receive a sentence of time served followed by immediate deportation. In this case, the aliens who were apprehended entering the United States with Mr. Garcia's help have already been prosecuted and deported within three months of their apprehension.

Mr. Garcia's incarceration for twice that length of time is sufficient to address his role in this offense and accomplish the goals of sentencing.

CONCLUSION

For the foregoing reasons, Defendant Jose Antonio Garcia-Jimenez requests this Court honor his request for a sentencing variance and sentence him to time served with immediate deportation as the most appropriate sentencing in this case.

Respectfully submitted,

**FEDERAL DEFENDER OFFICE**

s/ Rhonda Brazile

Attorney for Defendant Garcia-Jimenez
613 Abbott, 5th Floor
Detroit, MI 48226
Phone: (313) 967-5850
E-mail: Rhonda_Brazile@fd.org

---

**CERTIFICATE OF SERVICE**

I hereby certify that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to all counsel of record.

s/ Rhonda Brazile